UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ADRIAN SANTIAGO,

                Plaintiff,

        -against-

CUISINE BY CLAUDETTE, LLC *et al.*,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-2675 (OEM) (RER)

**ORELIA E. MERCHANT, United States District Judge:**

       Before the Court is plaintiff Adrian Santiago's ("Plaintiff" or "Santiago") motion to certify a conditional collective class under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 216(b). Defendants include three corporate restaurant entities: Cuisine By Claudette, LLC ("Claudette 116th Street"), Claudette Arverne LLC ("Claudette 69th Street"), and Greenhouse Rockaway LLC ("Greenhouse") (together, the "Restaurants"), and three individual defendants: Claudette Flatow ("Claudette F."), John Efrati ("Efrati"), and Yarden Flatow ("Yarden") (together, the "Individual Defendants") (collectively, with the Restaurants, "Defendants"). Defendants oppose certification. For the reasons set forth below, the motion to certify a conditionally collective action under the FLSA is **GRANTED** *in part* and **DENIED** *in part*, subject to the limitations discussed in this Memorandum and Order.

## BACKGROUND

       Plaintiff initiated this action on April 10, 2023, alleging, *inter alia*, violations of the FLSA and New York Labor Law ("NYLL"). *See* Complaint ("Compl."), ECF 1, ¶¶ 55-75. The complaint also contains FLSA collective action allegations and class allegations under Fed. R. Civ. P. 23. *Id.* at ¶¶ 19-30. The FLSA violations include alleged failures "to pay overtime wages to [Santiago] and FLSA Collective Plaintiffs for hours worked in excess of forty per workweek at

1

the proper overtime rate that is at least one-and-one-half times the regular rate of pay," "unpaid wages, including overtime, due to time shaving" and unpaid wages in general. *Id.* at ¶¶ 59-60, 65.

The complaint and Santiago's declaration in support of collective certification ("Santiago Decl."), ECF 20, establish the following relevant facts, which are taken as true only for the purposes of this motion. *See Jun Hua Yang v. Rainbow Nails Salon IV Inc.*, No. 18-CV-4970-DLI-SJB, 2019 WL 2166686, at *3 (E.D.N.Y. May 16, 2019).

The Restaurants are a trio of cafés operated by the Individual Defendants in Brooklyn. Compl. ¶¶ 7, 10-12. Santiago maintains that the Restaurants are a single integrated "enterprise" within the meaning of FLSA[1] and are under the common control of the Individual Defendants. Further, Santiago asserts that the restaurants all "implement the same wage policies to employees at all locations," which covers around 40 employees in total. *Id.* ¶ 9; Santiago Decl. ¶¶ 3-4.

On or about December 12, 2017, Santiago was hired to work as a "Barista/Server" at Claudette 116th Street and primarily worked at that location until Defendants terminated Santiago on September 14, 2022. Santiago Decl. ¶ 1; Compl. ¶ 31. While there is some uncertainty as to whether Santiago ever worked at Greenhouse, both parties agree that she at least worked at both Claudette 116th Street and Claudette 90th Street during the relevant period.[2] "In or around September 2019, [Santiago] was promoted to manager." Compl. ¶ 32. "In or around March 2021, [Santiago] was promoted to general manager. Even as a manager and general manager, [Santiago]

---

[1] *See* 29 U.S.C. § 203(r); Santiago's Memorandum of Law ("Pl's Cert. Memo"), ECF 20, at 1-4; This contention is not disputed by Defendants in their papers.

[2] Santiago alleges that Defendants employees were "moved interchangeably from location to location as needed" and, as such, she ostensibly worked at Claudette 90th Street and Greenhouse. Santiago Decl. ¶¶ 1, 3. While her complaint states that she "did not work at all of the Restaurants," Compl. ¶ 9, her declaration states that she "also worked at [Defendants'] other two restaurants." Santiago Decl. ¶ 1. Defendants maintain that Santiago "never worked at Greenhouse [] which has different ownership and thus different policies." Defendants' Memorandum in Opposition to Certification, ECF 21 ("Defs' Opp. Memo") at 12-13.

2

spent ninety-five percent of her time doing barista and kitchen work." *Id.* Santiago further alleges that she "was working past her scheduled shifts, two hours on weekdays and one hour on weekends, for a total of ten hours per week." *Id.* ¶ 36. Further, "[b]eginning in 2021, [Santiago] was required to clock out for forty-five minute lunch breaks. However, [she] was required to work through her lunch breaks. Therefore, [Santiago] was time shaved an additional 5.25 hours per week." *Id.* The complaint contains further allegations of untimely payment, non-payment for work performed at home during COVID, and nonpayment of the New York Labor Law ("NYLL") spread-of-hours premium. *Id.* ¶¶ 37-39.

Santiago also asserts that "[f]rom the beginning of [her] employment until in or around September 2019, [Defendants] paid [her] in cash; from September 2019 until the end of my employment, [Defendants] paid my by check." Santiago Decl. ¶ 6; *See* Compl. ¶¶ 40, 46.

On August 25, 2023, Santiago filed a motion to conditionally certify a FLSA collective. *See* ECF No. 17 ("Collective Cert. Mot."). On September 18, 2023, Defendants filed a memorandum in opposition, *see* Defs' Opp. Memo, and various exhibits. On October 2, 2023, Santiago filed her reply. ("Pl's Cert. Reply.") (ECF No. 22).

## **LEGAL STANDARD**

The FLSA itself establishes a "'*right* . . . to bring an action by or on behalf of any employee, and [a] *right* of any employee to become a party plaintiff to any such action,' so long as certain preconditions are met." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (quoting 29 U.S.C. § 216(b)) (emphasis in original); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (noting that Congress gave employees the "right" to proceed collectively). "The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it." *Glatt v. Fox Searchlight*

3

*Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citing *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 74 (2013)).

"One of the principal conditions to proceeding collectively under § 216(b) is that the named plaintiffs be 'similarly situated' to the opt-in 'party plaintiff[s].'" *Scott*, 954 F.3d at 515. (quoting 29 U.S.C. § 216(b)). Procedurally, the Second Circuit has endorsed a two-step process for certifying FLSA collective actions based on the "similarly situated" requirement:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs.

*Id.* (quoting *Glatt*, 811 F.3d at 540); *see Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) (setting out "clear guidance on the standard district courts should apply to motions seeking certification of a 'collective action' under § 216(b) of FLSA.").

The Second Circuit has opined that the standard of proof at this first opt-in notice stage—which is the stage the Court is called to rule on here—should "remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist[.]" *Myers* 624 F.3d at 555; *accord Diaz v. Weinstein Landscaping*, No. 19-CV-06050 (JMA) (ST), 2022 WL 801493, at *3 (E.D.N.Y. Feb. 28, 2022), *report and recommendation adopted*, No. 19-CV-06050 (JMA) (ST), 2022 WL 801322 (E.D.N.Y. Mar. 16, 2022). While "unsupported" assertions cannot suffice, the standard is nonetheless "fairly lenient." *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) (citation omitted). "The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA." *Diaz*, 2022 WL 801493, at *3. That is, "courts generally require that

there be a factual nexus between the claims of the named plaintiff and those who have chosen or might potentially choose to opt-in to the action." *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 122 (E.D.N.Y. 2020) (cleaned up). This less-stringent standard is warranted because at "the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

As to evidence that may be used for determining whether to conditionally certify a collective, a "plaintiff may meet this 'modest factual showing' with reference to his 'own pleadings, affidavits, and declarations, including any hearsay statements contained therein' and the Court is required to 'draw all inferences in [her] favor' without resolving credibility or factual disputes." *Taylor*, 2020 WL 4937483, at *2 (quoting *Chen v. Kicho Corp.*, No. 18-CV-7413, 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020)). "Importantly, at this stage, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Viriri*, 320 F.R.D. at 348 (cleaned up). "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification[.]" *Id.* (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 369 (S.D.N.Y. 2007)) (internal quotation marks omitted). Further, even if "dates of employment and hours worked are unique to each employee, that does not necessarily create dissimilarity under the FLSA." *Id.* (cleaned up).

## DISCUSSION

### A.  Conditional FLSA Collective Certification is Warranted

In her declaration and complaint, Santiago alleges that she was subjected to following FLSA violations: (1) time shaving, *i.e.*, only being paid for her scheduled hours despite working an additional 10 hours per week; (2) not being paid for work performed during her 45-minute lunch breaks; and (3) failing to pay overtime at the proper overtime rate.  Compl. ¶¶ 36, 60; Santiago Decl. ¶ 9 ("I was always required to work beyond my scheduled shift but was never paid proper overtime for all of these extra hours"); *see id.* ¶¶ 10-12.  *See also* Pl's Cert. Memo at 8-9.  Santiago's declaration also avers that while she was promoted to positions with a managerial title and was sometimes paid on a salaried basis, she was misclassified because the work she performed was still 95% barista and kitchen work throughout her entire period of employment.  Compl. ¶ 36; Santiago Decl. ¶ 7.

As to her allegations in support of other employees falling victim to this "common plan" to violate the FLSA, Santiago's declaration[3] establishes a "factual nexus" between her claims and other Restaurant employees' potential claims under the lenient conditional certification standard. *See Jibowu*, 492 F. Supp. 3d at 122.  First, Santiago's declaration specifically names five fellow employees – two-line cooks, three barista/servers, and one kitchen worker – with whom she regularly spoke regarding wages.  Santiago Decl. ¶ 5.  Santiago declares she would speak to her "co-workers in between serving customers, while performing side work and also while passing

---

[3] Courts in this circuit "have granted conditional certification based on the declaration and observations of only one individual." *See Valdez v. MichPat & Fam, LLC*, 2022 WL 950450, at *7 (E.D.N.Y., 2022) (citing *Cinar v. R&G Brenner Income Tax LLC*, 2021 WL 7366924, at *6 (E.D.N.Y., 2021)); *see also Sobczak v. AWL Indus.*, 540 F. Supp. 2d 354, 362 ("Courts regularly grant motions for approval of a collective action notice 'based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.").

through the kitchen about how unfair it was for [Defendants] not to pay [them] for all of [their] hours." *Id.* ¶ 9. Santiago would also speak to her coworkers while "commuting to and from work." *Id.* ¶ 5. She specifically discusses complaining with two other baristas about "unfair pay policies" and talked with the two named line cooks and a named barista about how they were "not being paid properly for [their] overtime hours." *Id.* ¶¶ 9-10. Santiago explains that, like her, these employees worked at the three different entities comprising the Restaurants on an "as needed basis" and Defendants paid them on an hourly basis. *Id*. ¶¶ 3, 9. These employees "told [Santiago] that the same thing happened to them where they worked over their scheduled hours and through their breaks but were not paid for the proper overtime hours." *Id.* ¶ 9; *see id.* ¶ 12 ("Often, I discussed [Defendants'] practice of failing to pay for all hours worked due to time shaving, especially with Vienna, Miguel, and Abelina. They would complain to me about working a ton of hours passed their regular shifts, but only being paid for their scheduled shifts."); *see also id.* at ¶ 13. Based on these conversations with at least five co-workers (and perhaps more) and her own personal observations from working at the two Claudette locations over the years, *see* Santiago Decl. ¶ 1, Santiago declares that she and the other employees of Defendants "were subject to the same wage and hour policies" and putative FLSA violations. The Court finds these factual allegations sufficient to clear the "modest factual" hurdle set at step one to warrant a notice to potential opt-in plaintiffs who may be similarly situated. *Myers*, 624 F.3d at 555; s*ee Diaz*, 2022 WL 801493, at *5 ("[By] providing names of co-workers through Defendant Weinstein's testimony, Diaz has offered facts that push the allegations beyond conclusory, which would allow the Court to test those assertions and would give Defendants the ability to contest them.").

Defendants' various arguments to the contrary do not hold weight here. Defendants attempt to argue that Santiago's declaration is lacking in "concrete facts" and that her

7

"conversations and observations with employees" are "without any detail" and "conclusory." Defs' Opp. Memo at 6, 8. But this is the opposite of the case here. The facts in Santiago's declaration show that she discussed with five specific Restaurant employees (including baristas and a kitchen worker like herself) Defendants' purported overtime violations and that those employees informed her that they suffered from unpaid wages and suffered "time shaving" as well. While "generalized reference to the alleged similar situations of other employees is precisely what many cases have held to be inadequate . . . there is a crucial difference between a plaintiff averring that 'I have spoken to other employees and they tell me they are treated the same,' as opposed to, 'I have spoken to [e.g.] Jane, Alexander, Joan Smith, and each of them has told me that they received no tip credit notice and worked an unpaid training period.'" *Shibetti v. Z Rest., Diner and Lounge, Inc.*, 478 F. Supp.3d 403, 414-15 (E.D.N.Y. 2020).

Additionally, Defendants argue that Santiago was, at certain points, a managerial, salaried employee exempt from the FLSA and accordingly is not "similarly situated" to her fellow hourly employees. *See* Defs' Opp. Memo at 3, 9. Santiago has maintained that even though she was at time salaried and received promotions to manager, she was in fact misclassified by Defendants and performed work as a regular barista and kitchen worker 95% of the time, notwithstanding her title. Santiago Decl. ¶¶ 6, 7, 9; Compl. ¶ 32. Of course, to determine whether Santiago was in fact a managerial employee "is a highly fact-intensive inquiry to be made on a case-by-case basis in light of the totality of the circumstances." *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010) (cleaned up); *see* 29 C.F.R. § 541.100 (listing factors for considering whether an employee is "employed in a bona fide executive capacity"). To engage in a fact specific exercise is inappropriate here at the conditional certification stage as such an inquiry goes to the merits of the underlying claims rather than to the basic question of whether other potential similarly

8

situated opt-in plaintiffs may exist. *See Viriri*, 320 F.R.D. at 348; *Myers* 624 F.3d at 555. Of course, should discovery yield more information as to Santiago's managerial status or reveal that she is not similarly situated to the opt-in plaintiffs, the collective may de-certified altogether. *See Taylor*, 2020 WL 4937483, at *3 ("Although discovery may reveal that Plaintiff's experience was unique and that Defendants have a basis to move for decertification, for the analysis required at this juncture, the showing is sufficient.") (quotation marks omitted).

## B. The Proposed Notice

Although §216(b) does not "expressly provide for court-authorized notice to potential opt-in plaintiffs in a collective action, 'it is well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice." *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819(GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006) (quoting *Hoffmann* 982 F. Supp. at 260). The FLSA does not contain a certification requirement, however, "[o]rders authorizing notice are often referred to as order 'certifying' a collective class." *Id.* at 2 (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). District "courts maintain discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *6 (E.D.N.Y. 2012) (internal quotation marks omitted) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007)).

Here, Santiago has provided a proposed FLSA collective opt-in notice (the "Proposed Notice"), ECF 19-1, and seeks to send the Proposed Notice to Covered Employees, *see infra* Part B.1, prior to full discovery. Pl's Cert. Memo at 19-20. *See also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 201 (S.D.N.Y. 2006) ("Courts also may permit limited discovery to facilitate notice"

to FLSA collectives). Defendants raise no issue to this early distribution of the Proposed Notice or the proposition of early discovery in their briefing and the Court agrees that any notice and preliminary discovery should be expedient give the "remedial purpose of the" FLSA. *See Hoffmann*, 982 F. Supp. at 262 ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"). However, Defendant launch various other objections regarding the Proposed Notice. For the reasons stated herein, the Court adopts Plaintiff's Proposed Notice, in part, subject to the modifications below.

 1. **Employees Covered by the Notice**

Santiago proposes sending the Proposed Notice to all "former or current non-exempt employee (including, but not limited to, baristas, juicers, counter persons, servers, cooks, food preparers, and bakers, among others)" working at the Restaurants ("Covered Employees"). *See* Proposed Notice at 1. Defendants argue that Santiago's Proposed notice is too broad and should only be distributed to employees who had the title of "Manager and/or General Manager." Defs' Opp. Memo at 12-13. As discussed above, the argument is predicated on Defendants' view of the merits of this case and Santiago's titled position as a managerial employee. Santiago's declaration, which is accepted as true for the purposes of this motion, *see Taylor*, 2020 WL 4937483, at *1, indicates that, notwithstanding her title, she actually worked 95% as a barista and kitchen worker and worked with other hourly (*i.e.*, "non-exempt") workers who held those two positions (and others) at the three Restaurants who may have been subject to purported FLSA violations. At this juncture, a wider cast of the net is warranted, and final collective certification will sieve out those who are not similarly situated or otherwise decertify the class. *Myers*, 624 F.3d at 555. For these same reasons, the Court also finds that the Proposed Notice should be sent to employees at

Greenhouse, even if it turns out to be the case that Santiago did not work there herself. *But see* Opp. Memo at 12-13. Defendants proffer that Greenhouse's ownership structure may have given rise various "different" "policies" but does not supply information as to how this information would change the analysis or how its payment to hourly employees was actually conducted. *See id.* Indeed, Defendants do not dispute that Greenhouse was part of the Defendants' integrated enterprise of cafes and Santiago's declaration makes clear that many Restaurant employees worked at all three different locations as needed; that she talked to many employees about purported overtime violations; and she discussed overtime failure to pay overtime during breaks with one employee, Vienna, who both worked with Santiago and who also worked at Greenhouse. Santiago Decl. ¶¶ 1-4, 5, 10.

### 2. Opt-In Notice Period

Santiago proposes sending the Proposed Notice to Covered Employees who worked at the Restaurants "at any time between April 10, 2017, [to] the present," which is six years prior to the filing of the complaint. Pl's Cert. Memo at 22-23. Santiago requests this six-year period, despite the FLSA only having a maximum statute of limitation of three years, because the NYLL claims have a statute limitation of six years. *See id.*; NYLL § 198(3). Drawing on the small number of employees that worked for the Restaurants –generally around a cap of 40 employees – and the fact that Santiago has already identified five by name with potential live FLSA and NYLL claims, the Court finds it reasonable and prudent to grant a six year notice period. *See Brown v. AvalonBay Communities, Inc.*, No. CV 17-6897 (AKT), 2019 WL 1507901, at *12 (E.D.N.Y. Mar. 29, 2019) (a six-year limitations period may be appropriate "where the number of potential opt-in plaintiffs is small and readily ascertainable,"  but rejecting six year period for three year period because collective would "potentially cover employees with thirteen professional titles who are located in

11

six different states"). At this stage, "it seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 132 (E.D.N.Y. 2011) (quoting *Cano v. Four M Food Corp.*, No. 08–CV–3005, 2009 WL 5710143, at *10 (E.D.N.Y. Feb. 3, 2009)) (granting six-year period opt-in where named Plaintiff "believes the other twenty to thirty cleaners employed by Defendants were not provided with proper payment for overtime.") (collecting decisions of other courts which have applied a six-year period). Accordingly, the April 10, 2017 start date shall apply.

### 3. Discovery Regarding Potential Collective Members

Santiago seeks an order requiring Defendants to produce, in Excel format, a list of Covered Employees who worked at any Restaurant "at any point in the six years prior . . . . [along] with the following information: names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers." Pl's Cert. Memo at 20-21. Santiago also requests that Defendants furnish employees' Social Security numbers in the event that notice mailings are returned as undeliverable. *Id.* Defendants object to providing any information beyond employee names and last known addresses. Defs' Opp. Memo at 21.

It is common practice in this district to have employers in FLSA actions produce the information that Santiago requests for collective class notices. *See, e.g.*, *Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-CV-5267 (JS) (SIL), 2019 WL 1060627, at *7 (E.D.N.Y. Mar. 6, 2019) ("Defendants are directed to provide Plaintiffs with a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, and dates of employment of potential opt-in plaintiffs, consistent with the class described herein, on or before April 12, 2019") (collecting cases); *Wang*, 2022 WL 79155, at *16 ("In general, it is appropriate for courts in collective actions to order the discovery of names,

addresses, telephone numbers, email addresses, and dates of employment of potential collective members.").

However, the Court denies Santiago's request insofar as it requests potential opt-in plaintiffs' Social Security numbers, even if some forms of notice are not successful. *See e.g.*, *Jibow.*, 492 F. Supp. 3d at 129 (rejecting plaintiff's request to have employer disclose "Social Security numbers of prospective plaintiffs whose notices are returned as undeliverable."). Defendants shall produce Covered Employees' names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone number within fourteen (14) days of entry of this Memorandum and Order.

### 4. Translation into Spanish

Santiago proposes translating the notice into Spanish "[g]iven that many of the prospective plaintiffs in this case will be native Spanish speakers[.]" Pl's Memo at 23-24. Defendants do not dispute that many of their employees speak Spanish but generally object on the grounds that translation "may invite a different interpretation of the Notice than as permitted" and specifically requests that "[i]f Plaintiff is allowed to publish the notice in Spanish, Defendants request that Plaintiff file affidavits from the translators attesting to the accuracy of the translation." Defendants' Opp. Memo at 13.

The Court finds translation is appropriate fulfill the FLSA's remedial goals here and authorizes translation of the notice to Spanish. *See Wang*, 2022 WL 79155, at *14; *Han*, 2021 WL 3774186, at * 14. Plaintiff is to provide a translation of the final notice to Defendants within 10 days of the final approval of the Proposed Notice. The translation shall be accompanied by an affidavit of the translator.

### 5. Dissemination of Notice

Santiago "requests that the Court permit Plaintiff to disseminate the Proposed Notice by mail, e-mail, and text messages." Pl's Cert. Memo at 21-22. Defendants object on the grounds that first class mail is "standard." Defendants Opp. at 14. However, Defendants' law cited for this proposition did not concern FLSA collective actions but rather a notice of settlement to a settlement class in a Rule 23 class action from 2007. "The Court agrees that dissemination of the notice by mail, email, text message" is appropriate. *Wang*, 2022 WL 79155, at *15 (collecting cases).

### 6. A 60-Day Notice Window is Appropriate

The Proposed Notice provides a 90-day window for potential opt-in collective members to send their consent forms. *See* Notice at 3 ("To join this lawsuit, you must sign a 'Consent to Sue' form, which is enclosed with this Notice, and send it on or before [90 days from the date notice is sent out]:"). Defendants object and request a 30 or 60 day window. Defs' Opp. Memo at 14. In general, courts only allow a 90-day opt-in period "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Wang*, 2022 WL 79155, at *13 (citations omitted). In contrast, "[c]ourts often grant 60-day opt-in periods ... where the record suggests that the proposed collective is modest in number." *Id.* (citing *Han*, 2021 WL 3774186, at *13). "Here, the record suggests that the proposed collective is relatively small, and [Santiago] ha[s] not presented special circumstances to justify extending the opt-in period." *Id.* Accordingly, the Proposed Notice shall be modified to provide for sixty (60) days during which potential plaintiffs may opt in. *See id.* (ordering same).

\* \* \*

### 7. Opt-In Claims Shall Be Sent to the Clerk of Court

Santiago requests that "forms be sent to Plaintiff's counsel directly" as "[r]equiring opt-in claimants to file their forms with the Clerk discourages participation and prohibits Plaintiff's counsel from conducting his investigation and contacting his own possible clients." Pl's Cert. Memo at 23. The Court disagrees. "The common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court[.]" *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 462 (E.D.N.Y. 2014); *accord Wang*, 2022 WL 79155, at *15; *see also Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642(WFK)(ST), 2016 WL 11263668, at *15 (E.D.N.Y. Nov. 23, 2016) (collecting cases), *report and recommendation adopted*, No. 15-CV-3642(WFK)(SLT), 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017). The Court sees no need to deviate from this standard here. The Proposed Notice shall be revised and state that potential opt-in plaintiffs should return their consent forms to the Clerk of the Court, not Santiago's counsel. *See, e.g.*, *Han*, 2021 WL 3774186, at * 17.

### 8. Objections to Language in the Proposed Notice

Defendants make various objections to language used in the Proposed Notice. This includes objection to the use of the word "improper" and other language that Defendants do not believe is sufficiently "neutral." *See* Defs' Opp. Memo at 14. As the Court has granted conditional collective certification, the parties are ordered to *meaningfully* meet and confer on these issues and provide a revised notice to the Court within 14 days of this Memorandum and Order.

## C. Equitable Tolling

As an initial matter, Santiago has repeatedly alleged that Defendants willfully violated the FLSA and, accordingly, the Court finds that the three-year statute of limitations applies. Compl. ¶¶ 20, 49-50, 62, 64-65. *Wang v. Kirin Transportation Inc.*, No. 20-CV-5410(KAM)(TAM), 2022

WL 79155, at *12 (E.D.N.Y. Jan. 7, 2022) ("At the first stage of conditional certification, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class.") (cleaned up); *Alvarez v. IBM Rests., Inc.*, 839 F.Supp.2d 580, 587–88 (E.D.N.Y 2012) (finding the three year statute of limitations appropriate where "[p]laintiffs have alleged willfulness in their Complaint"); *see also Valerio v. R.N.C. Indus., LLC*, 314 F.R.D. 61, 73–74 (E.D.N.Y. 2016) (collecting cases).

Santiago requests that the FLSA statute of limitations be tolled to from the "date th[e] motion [for conditional certification was] filed," *i.e.*, August 25, 2023. Pl's Cert. Memo 24-25. Santiago contends that equitable tolling is warranted because (1) courts in this Circuit "have increasingly granted requests for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of such cases" and (2) she "been diligent in seeking this certification and the Court should therefore grant equitable tolling from the date this motion is filed." *Id.* (citing *Garriga v. Blonder Builders Inc.*, No. 17-CV-497(JMA)(AKT), 2018 WL 4861394, at *7 (E.D.N.Y. Sept. 28, 2018)). Defendants maintain that precedent places a high burden on a plaintiff seeking to invoke equitable tolling and that Santiago has not met that burden nor can she invoke equitable on behalf of other opt-in plaintiffs. Defs' Opp. Memo at 11-12.

To be clear, "[a] statute of limitations may be tolled as necessary to avoid inequitable circumstances." *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 264 (2d Cir.1990)). "Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights." *Id.* (cleaned up). Further, equitable tolling is considered "on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir.), *cert. denied*, 531 U.S.

968 (2000). Thus, "to be entitled to equitable tolling, [a party] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Lawrence v. Fla.*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

In the context of FLSA conditional certification motions, there has indeed been an ongoing trend over at least the last 17 years in which courts have tolled the FLSA statute of limitations for potential opt-in plaintiffs. *See, e.g., Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198-202 (S.D.N.Y. 2006). The general principle in doing so derives from "[t]he fact that the statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 AJN, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (Nathan, J.). *See* 29 U.S.C. § 256(b). Further, "for the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period." *Lee*, 236 F.R.D. at 199 (citation omitted). Thus, "Courts often begin counting back from the date of the conditional certification order since the statute of limitations on FLSA claims continues to run until a plaintiff consents to join the action." *Garriga*, 2018 WL 4861394, at *7. Functionally here, potential plaintiffs who last worked in or around November 2020 or before would potentially be barred from opting-in and would require equitable tolling for their claims to proceed.

On the facts here, Santiago has presented no "extraordinary circumstances" that stood in her way from exercising her rights under the FLSA and warranting equitable tolling at this time other pointing a trend of some courts granting them given the "unique procedural posture" of FLSA collective actions. Pl's Cert. Memo at 24. The clear and controlling precedent requires more.

17

"Because governing precedent does not permit equitable tolling here, [plaintiff's] application for a categorical ruling tolling the statute of limitations for all opt-in plaintiffs is denied." *Knox v. John Varvatos Enterprises Inc.,* 282 F. Supp. 3d 644, 660 (S.D.N.Y. 2017). "This ruling is without prejudice to any application by a plaintiff for equitable tolling that conforms to the requirements of the equitable tolling doctrine." *Id.*

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for conditional certification as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is **GRANTED** *in part* and **DENIED** *in part*, subject to the limitations discussed in this Memorandum and Order. The Court further orders that:

(1) within fourteen (14) days of this Order, by **November 30, 2023**, the parties are to meet and confer in good faith, and by **December 18, 2023**, the parties shall submit a revised Proposed Notice and consent form that complies with the directives set forth herein;

(2) within fourteen (14) days of this Order, by **November 30, 2023**, Defendants are to produce to Plaintiffs a spreadsheet including the "names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers" of all Covered Employees, i.e. former or current non-exempt employees, including, but not limited to, baristas, juicers, counter persons, servers, cooks, food preparers, and bakers, among others employed by at any Defendants time from the April 10, 2017 to the present;

(3) within thirty (30) days of final approval by the Court, Plaintiffs or their designated representative shall cause a copy of the notice form to be disseminated to the Covered employees by first class mail, email, text message.

(4) within thirty (30) days of the Court's final approval of the notice, the parties are to meet and confer in good faith, sand set out a deposition schedule for the discovery period granted herein.

**SO ORDERED.**

                                                           /s/ Orelia E. Merchant
                                                         ORELIA E. MERCHANT
                                                         United States District Judge

Dated:	November 17, 2023
	Brooklyn, New York